BEAMAN v. BOARD OF COM'RS OF LINCOLN COUNTY *et al.*

No. 1063. Opinion Filed March 1, 1910.

(107 Pac. 520.)

**COUNTIES—Taxation—Eradication of Ticks.** The board of county commissioners of any county which is above the quarantine line, as established by the State Board of Agriculture, has authority by reason of section 2 of House Bill No. 337 (Sess. Laws 1909, p. 19; section 219, Comp. Laws 1909) to levy a tax on all the taxable property within such county to provide a fund with which to co-operate with the State Board of Agriculture in the work of eradicating ticks, the carriers of Texas or splenetic fever, and may levy such tax without a petition from a majority of the voters of the county or any township therein.

(Syllabus by the Court.)

*Error from District Court, Lincoln County; J. B. A. Robertson, Judge.*

Action by C. G. Beaman against the Board of County Commissioners of Lincoln County and others. From an order dissolving a temporary injunction, plaintiff brings error. Affirmed.

*Emery A. Foster,* for plaintiff in error.
*John J. Davis,* for defendants in error.

Vo'. 25—43

HAYES, J. This appeal is from an order of the judge of the district court of Lincoln county, dissolving a temporary injunction. Plaintiff's petition in the lower court alleges that he is a resident of South Choctaw township in Lincoln county, and is the owner of certain cattle situated in that township; that 3 of the defendants constitute the duly elected, qualified, and acting board of county commissioners of Lincoln county; that the other 19 defendants are live stock inspectors acting by virtue of some pretended authority and appointment from said board of county commissioners. Plaintiff alleges that defendants, acting together, have established dipping vats at several points in nearly all of the townships of the county; that same were established therein without legal petition therefor by a majority of the voters of the county, or of said townships; that the vats have been established for the purpose of dipping cattle therein as a means of eradicating ticks; that defendants have been driving the cattle of the various residents of the county to said dipping vats and dipping them; that they threaten, and will, unless prevented by injunction, drive plaintiff's cattle to his injury and damage to one of such dipping vats and dip them; that the process of dipping and spraying the cattle used and threatened to be used by the defendants is dangerous and seriously affects the health of the cattle, and causes the milch cows to give less milk. He further alleges that said county commissioners, acting through the inspectors as their agents, are incurring to the county in violation of law the expense of the construction of said vats and of dipping said cattle, and the expense of the inspectors' salaries, and that the board of county commissioners are about to, and will, unless restrained, incur and pay out to said inspectors and to other persons for constructing the vats and putting them into operation and dipping the cattle large sums of money of the county, thereby burdening upon the taxpayers of the county of which plaintiff is one an expense not authorized by law.

The foregoing facts, substantially stated as alleged in the petition, are not all the matters set up in the petition, but are

sufficient for a consideration of the questions presented by this proceeding. A temporary injunction was granted upon the petition without notice. The motion upon which the order dissolving the injunction was made partakes of the nature both of a demurrer and answer to the petition. The questions of law presented, however, by this proceeding, are raised upon the motion treated as a demurrer. Defendants contend that they are acting under the provisions of an act of the Legislature entitled "An act providing for the eradication of ticks and other ways to protect the live stock of Oklahoma. * * *" Sess. Laws Okla. 1909, p. 19. The validity of this act or any of its provisions has not been questioned by either party. The entire controversy revolves around the construction of certain provisions of the act, and the questions of law presented for our determination have been by counsel limited in their briefs to two propositions: First, whether the board of county commissioners of a county under the provisions of the act has authority, without petition by a majority of the voters of the county or of any municipal township, to levy a tax on all the taxable property of the county and employ inspectors, construct dipping vats, and dip cattle located in such township or county, thereby incurring expenses to the taxpayers of the county. Second, if the board has no such authority, has plaintiff an adequate remedy at law? We shall confine our discussion strictly to the questions of law raised in the briefs, and, in doing so, we shall consider these propositions in the order here stated; for, if it be determined that the board of county commissioners are acting under authority of law, it will follow that the order dissolving the injunction was properly made, and there will be no necessity of considering the second proposition.

Lincoln county is above the quarantine line as fixed by the proclamation of the State Board of Agriculture. Whether defendants are acting under authority of law depends upon the effect of certain provisions of sections 2 and 3 of the act of the Legislature previously referred to. If the board of county commissioners has power under the provisions of section 2, without petition of the

voters, as provided by section 3, to levy a tax to . create a fund in which to co-operate with the State Board of Agriculture in eradicating ticks from live stock, then all the acts · of defendants are clearly lawful. Section 1 · of the act makes it the· duty of the president of the State Board of Agriculture, when said board has determined quarantine lines in the state, and made rules and regulations to maintain and enforce same, to proclaim the boundary and location of said quarantine lines, and the orders, rules, and regulations prescribed by the board, and to publish his proclamation in three newspapers of general circulation within the state. It provides that, when a majority of the voters of any township below the quarantine lines fixed by the board and bordering thereon shall petition therefor, it shall be the duty of such Board of Agriculture to place such township above the quarantine line. The first two sentences of section 2 makes it the duty of boards of county commissioners to co-operate with the State Board of Agriculture in protecting live stock in their respective counties from all contagious diseases, and especially to co-operate with the State Board and its officers in the work of eradicating ticks, the carriers of Texas or splenetic fever. The remaining part of that section reads as follows:

"Said board of county commissioners of any county situated above the state quarantine line as fixed by the State Board of Agriculture, shall have the power to levy a tax on all taxable property within the county to provide a fund with which to co-operate with the State Board of Agriculture in the work of eradicating ticks of the variety above mentioned *and as provided for more particularly in section 3 of this act,* which fund may be used for any one or all of the purposes of constructing suitable dipping vats, of employing competent live stock inspectors, for purchasing material for disinfection or for anything which in the opinion of the board of county commissioners promises to further the protection of live stock interest of the county. And no cattle containing southern ticks (morgaropus annulatus) shall be brought from any point below the quarantine line into the section above the quarantine line established by the Board of Agriculture as herein provided." (Italics are ours.)

. Section 3, in part, provides:

"When so petitioned by a majority of the voters of any county or municipal township within the county, such majority to be measured by the number of votes cast at the last general election, the board of county commisioners of any county shall make a levy on all taxable property of the county, such as will be necessary to bear the actual cost of co-operating with the State Board of Agriculture as provided for in section 2 of this act, and to establish and construct one substantial public dipping vat, or as many of said vats of necessary dimensions as may be advised by the State Board of Agriculture or its supervising agents, in each municipal township for the purpose of dipping all cattle in such township. * * * "

If the italicized phrase in section 2, to wit, "and as provided for more particularly in section 3 of this act," limits and qualifies the power of the board of county commissioners to levy a tax, then evidently the board of county commissioners in this case did not have the power to levy such tax and employ inspectors to inspect live stock of the county, and to discharge other duties for the protection of same, for no petition of the voters as prescribed in section 3 was filed with them. But we do not think that this clause was intended to limit and qualify that clause of the sentence which grants the power to the board of county commissioners, but that it was intended that it should, with the phrase, "with the State Board of Agriculture in the work of eradicating ticks of the variety above mentioned," qualify the words "to co-operate," and by the use of said clause it was intended by the Legislature to indicate more particularly and define more definitely the duty of the board of county commissioners, relative to co-operating with the State Board of Agriculture in eradicating from live stock ticks, the carriers of Texas or splenetic fever, by directing them to do those things which are more particularly enumerated in the latter part of section 3, to wit: To construct vats of the dimensions advised by the State Board of Agriculture in each municipal township; and to dip live stock infected by such ticks in such material as may be approved by the State Board of

Agriculture. That this was the legislative intent, we think, is indicated by a somewhat similar phrase in section 3, used in a very similar relation, as follows:

"* * * The board of county commissioners of any county shall make a levy on all taxable property of that county such as will be necessary to bear the actual cost of co-operating with the State Board of Agriculture as provided for in section 2 of this act. * * *"

By the provisions of section 2, the power is granted to the board of county commissioners to levy a tax to defray the expenses of co-operating with the State Board of Agriculture for the purposes enumerated in that section and more particularly mentioned in section 3; but the levy of such tax was not made mandatory upon the board of county commissioners under the provisions of section 2. The exercise of the power was left to the discretion of the board. Section 3, on the other hand, makes it mandatory upon the board to levy tax upon all of the taxable property of a county for the purpose of carrying out the objects of the act and to perform the duties imposed upon the board by the act when petitioned so to do in the manner provided by that section. The provisions of these sections are somewhat loosely drawn, and are not so clear as to be entirely free from ambiguity; but we think the foregoing was the legislative intent, and that should control.

We wish to call attention to one of the provisions of section 3, which, if applied literally, will, in our opinion, lead to results not intended by the Legislature, and it would be difficult to give a different meaning to the provision than that expressed by its language. That provision of the section, making it the duty of the board to levy a tax requires such levy to be made "when so petitioned by a majority of the voters of any county or municipal township within the county." It would appear from this language, if it is taken to mean what it literally says, that the board shall act when a petition is filed containing a majority of the voters of either the county or of a municipal township; but, when the board does act, the language of the section requires that it

shall make a levy on "all taxable property of the county." No provision is made for the board to levy a tax upon the property of any township. When it makes a levy, it is to be upon all property in the county. Thus it would seem that a majority of the voters of any municipal township might require the board of county commissioners to levy a tax upon the entire county, although the remaining townships and the board of county commissioners were unanimously opposed to it. We do not decide such to be the result of this provision of the section, but we· call attention to what may be an eror in this provision in order that the Legislature may make the same more definite and free from ambiguity, if the literal language of the section does not express the meaning that was intended.

·Since, under our construction of the act, the defendants were acting under authority of law, the trial judge committed no error in dissolving the injunction, and the cause is affirmed.

Dunn, C. J., Kane and Turner, JJ., concur; Williams, J., not participating.